## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **Debra J. Brent,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **CIVIL NO. JKB-22-1349** |
| **City of Cumberland Police Department, et al.,** | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM

*Pro se* Plaintiff Debra Brent initiated this lawsuit against the City of Cumberland Police Department and Patrol Officers Duncan Cramer, Joshua Roberts, and Andrea Bennett (together, the "Cumberland Defendants") and Allegany County Maryland Emergency Services on June 3, 2022. (Compl., ECF No. 1.)  She brings claims arising under the United States Constitution, Maryland common law, and the Maryland Constitution.

Currently pending before the Court are the Cumberland Defendants' Motion to Dismiss the Complaint (ECF No. 8) and Motion to Strike the (first) Amended Complaint (ECF No. 16); Brent's Motion to File a Second Amended Complaint (ECF No. 18), Motion to Request a Court Appointed Pro Bono Attorney (ECF No. 22), and Motion to Permit Filing of Video Recordings as a Physical Exhibit (ECF No. 31); and Allegany County Board of County Commissioner's Motion to Dismiss the Second Amended Complaint or, in the Alternative, for Summary Judgment (ECF No. 24) and Motion to Permit Filing of Audio/Digital Recordings as a Physical Exhibit. (ECF No. 26.)  These Motions have been fully briefed and no hearing is necessary. *See* Local Rule 105.6

(D. Md. 2021).    For the reasons set forth below, the Court will grant in part and deny in part Brent's Motion to File a Second Amended Complaint (ECF No. 18); deny without prejudice Brent's Motion for a Court Appointed Attorney (ECF No. 22); deny without prejudice Brent's Motion to Permit Filing of Video Recordings as a Physical Exhibit (ECF No. 31); and grant Allegany County's Motion to Dismiss (ECF No. 24).    It will deny all other motions as moot.

## I.    *Factual and Procedural Background*[1]

Debra Brent is a Black woman and resident of Cumberland in Allegany County, Maryland. (ECF Nos. 18-1 at 4, 18-2 at 2.)  Her lawsuit stems from an ongoing conflict with her neighbors, Robert Parks, Van Gaus, Cynthia Gaus, and Alexia Gaus, and the City of Cumberland and Allegany County's responses to her requests for assistance. (*See generally* ECF No. 18-1.)  Brent has made multiple 911 calls complaining of harassment by her neighbors, particularly concerning Parks. (*Id.* at 2.)  "Numerous police reports" indicate that "Parks admitted shouting racist slurs at [Brent] and intentionally disturbing [her] peace with loud music" and that he has been "specifically instructed by officers to stop both harassing [Brent] and disturbing [her] peace," as well as to stop "shouting derogatory racist slurs at [her]." (*Id.* at 3, 9.)  Brent alleges that videos also show Parks "exposing his private parts." (*Id.* at 4.)

Many of Brent's allegations relate to an interaction with Officers Cramer and Roberts on June 20, 2021.  On this occasion, Officer Cramer ignored these prior police reports detailing Brent's interactions with Parks, "disregard[ed] a video [Brent] attempted to show him" "depict[ing] an incident of harassment initiated by Parks[,]" "admonished [Brent] for recording it[,]" and "instructed" Brent "to never call the police again." (*Id.* at 3, 5.)  Officer Cramer "never admonished [Parks] for his behavior" and treated Parks with respect. (*Id.* at 5.)  Officer Roberts

---

[1] The facts in this section are taken from the proposed Second Amended Complaint (ECF No. 18-1) and construed in the light most favorable to Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

similarly "chose to speak solely with Parks and apparently accepted his complete fabrication of the events" and "just like Cramer, he did not provide [Brent] with any assistance." (*Id.* at 6–7.)

After the interaction with Brent on June 20, 2021, Officers Cramer and Roberts walked across the street and laughed at Brent along with Van and Cynthia Gaus. (*Id.* at 3, 14.) Van and Cynthia Gaus "waved down" Officers Cramer and Roberts, and Cynthia Gaus referred to Officer Cramer by his first name. (*Id.* at 14.) Officer Cramer's report stated that he and Officer Roberts had a personal conversation with Van and Cynthia Gaus. (*Id.*) Similarly, a different officer's police report from May 22, 2021, referenced a conversation between Officer Cramer and the residents of the Gaus house "about something completely unrelated to [Brent], or the call that [they] were on." (*Id.*) Van Gaus "has acknowledged being a Nazi" and is friends with Parks. (*Id.*) Brent alleges that "[t]hese neighbors were treated in a courteous and respectful manner at all times by the defendants." (*Id.* at 15.)

Brent requested another officer to be dispatched to the scene on June 20, who "apologized for both defendants' unprofessional behavior." (*Id.* at 5, 11.) Later that evening, Officer Cramer was again dispatched to the area "at the request of his white racist friends" and knocked on Brent's door, but she did not answer. (*Id.* at 11.)[2]

On June 24, 2021, Brent filed a police misconduct complaint with the Cumberland Police Department against Officers Cramer and Roberts. (*Id.* at 5, 12.) On June 25, 2021, Officer Cramer

---

[2] Apart from these specific allegations against Officers Cramer and Roberts, Brent alleges that the City of Cumberland "failed to adequately investigate a suspicious crime in which a speeding truck coming from defendants Van and Cynthia Gaus' backyard at night was heading directly at [Brent]" and "came within a few feet of [her.]" (ECF 18-1 at 7–8.) She further alleges that "[t]he City of Cumberland also readily accepts negative characterizations of a black citizen by white citizens who are racists" and provides two examples involving officers not named as defendants. (*Id.* at 8–9 (describing police report by Officer Michael Bise in which he stated that—based on false reports from defendant Parks and without speaking to Brent herself—"[d]ue to the information provided to me[,] I determined Debra [Brent] to be a danger to herself and others" and in his follow-up report falsely indicated that Brent was "arrested"); *id.* at 10 (alleging that Officer Sue Ellsworth, without having met Brent, "states in her report that 'The caller Debra Brent is 10-96,'" which "is code for insane").)

filed a criminal complaint against Brent, supported by police reports made by Officer Roberts. (*Id.* at 2, 5, 7.) That criminal complaint included allegations of "inappropriate 911 calls . . . going back several years prior to the date he filed his complaint." (*Id.* at 4.) On June 26, 2021, as a result of Officer Cramer's complaint, charges were filed against Brent for: "1) Harass: A Course of Conduct, 2) Tel Misuse Repeat Calls, 3) Disturb Peace: Loud Noise, 4) Disturb Peace: Loud Noise, 5) Disturb Peace: Loud Noise." (*Id.* at 2.) The State's Attorney terminated prosecution and dismissed the charges by entering a nolle prosequi on April 1, 2022. (*Id.* at 2 (citing Ex. 4 (Notice of Nolle Prosequi and Dismissal, ECF 11-4 at 5)).)[3]

Neither Officer Cramer nor Officer Roberts filed a criminal complaint against Parks. (*Id.* at 6–7.) In early 2022, Brent filed an Application for Statement of Charges in the District Court of Maryland for Allegany County against Parks relating to the events on June 20, 2021 and other incidents. (*Id.* at 6 (citing Ex. 5 (Application for Statement of Charges, ECF No. 11-4 at 6)).) The State of Maryland filed charges against him on January 18, 2022, which were later dismissed. (*Id.*)

On June 25, 2021, Brent contacted Allegany County Emergency Services regarding a "peppery substance" outside her bedroom window. (*Id.* at 13.) The dispatcher she spoke to "was rude, refused to render aid, and stated that she was informed [Brent] had recently filed a police misconduct complaint against defendants Cramer and Roberts. She further stated that Allegany County was directed by the City of Cumberland to not provide [Brent] any assistance." (*Id.*) Brent was transferred to a second dispatcher who was "rude and abruptly hung up on [her]." (*Id.*) Brent

---

[3] "Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment[,]" particularly "documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits[.]'" *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). Brent references several exhibits throughout the proposed Second Amended Complaint. (*See generally* ECF 18-1- (citing Exhibits 1–7 and A–H, J–K).) The cited exhibits are not attached to Brent's proposed Second Amended Complaint. She docketed those exhibits, however, with earlier filings. (ECF 11–3 (Exhibits A-J); ECF 11-4 (Exhibits 1–6); ECF 15-3 (Exhibit 7); ECF 15-4 (Exhibit K).)

alleges that she is therefore unable to access assistance "in the event of a safety, fire, and/or health emergency." (*Id.* at 17, 23.)

On October 21, 2021, Officer Bennett filed a traffic complaint against Brent. (*Id.* at 19.) Brent was formally charged on December 8, 2021 and received a criminal summons. (*Id.* (listing charges as "Reckless Driving, Unsafe Left Turn in No Passing Zone, Driver Failure to Obey Designated Lane Directions, and Unsafe Lane Changing").) Brent alleges that this complaint "was initiated in part by racist neighbors defendants Van and Cynthia Gaus" and "consisted largely of police reports that were unrelated to the complaint" written by Officers Cramer and Roberts. (*Id.*) Due to a purported technical issue stemming from the traffic complaint, Brent's driver's license was suspended and she lost her car insurance coverage for a period of time. (*Id.* at 18, 21.) The traffic chargers were dismissed on March 31, 2021. (*Id.* at 21.)

These events caused Brent a great deal of stress, severe insomnia, anxiety, and other physical health issues. (*Id.* at 17, 22–23.) Brent "continue[s] to receive therapy relating to the anxiety condition that this situation has caused [her]." (*Id.* at 23.)[4]

Brent filed suit against the Cumberland Defendants and Allegany County Maryland Emergency Services on June 3, 2022. (ECF No. 1.) She asserted claims under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, Articles 13 and 40 of the Maryland Constitution, and Maryland common law claims of defamation and harassment and intentional infliction of emotional distress ("IIED"). (ECF No. 1 at 1–6.)

The Cumberland Defendants moved to dismiss the Complaint. (ECF No. 8.) Brent responded in opposition to the Motion to Dismiss (ECF No. 11) and subsequently filed an

---

[4] Brent also alleges that the criminal charges initiated by Officer Cramer caused her to lose her job and have negatively impacted her reemployment efforts. (ECF 18-1 at 18.) Brent further alleges that in late spring of 2021, Alexia Gaus came to Brent's place of employment and "viciously [lied] about her interaction with [Brent]" and that Brent was "terminated in June 2021 from [her] former employer due to the exaggerations and lies that [Alexia Gaus] told." (*Id.*)

Amended Complaint. (ECF No. 15.)  The Cumberland Defendants moved to strike the Amended

Complaint for failure to comply with Local Rule 103.6 (requiring party filing an amended pleading

to attach a clean copy of the amended pleading and a "redlined" copy showing the changes made)

and Federal Rule of Civil Procedure 11(a) (requiring a signature on every pleading). (Mot. Strike,

ECF No. 16; Mem. Supp. Mot. Strike, ECF 16-1, at 2.)

Brent filed a Motion for Leave to File a Second Amended Complaint on October 11, 2022.

(ECF No. 18.)[5]  The proposed Second Amended Complaint is substantively similar to the first

Amended Complaint, but adds as defendants Robert Parks, Van Gaus, Cynthia Gaus, and Alexia

Gaus (together, the "neighbor Defendants"). (*Compare* ECF No. 18-2, *with* ECF No. 15.)  The

proposed Second Amended Complaint changes the institutional defendants to the City of

Cumberland (instead of "City of Cumberland Police Department") and Allegany County (instead

of "Allegany County Emergency Services"). (ECF 18-1.)  The County defendant identifies itself

as "Allegany County Board of County Commissioners." (ECF 24 at 1.)  The Court will refer to

the government entities as the "City of Cumberland" and "Allegany County."

The proposed Second Amended Complaint asserts the following claims: "Violation of the

Fourth Amendment (Malicious Prosecution)" against Officer Cramer; "Violation of Fourteenth

---

[5] The first attachment to Brent's Motion appears to be the proposed Second Amended Complaint. (ECF No. 18-1.) Brent also attached a completed version of the Court's Pro Se Complaint for Violation of Civil Rights form (ECF No. 18-2); a document that appears to be the first ten pages of ECF No. 18-1, with the entirety of the text underlined (ECF No. 18-3); a "redlined" version of the Pro Se Complaint form (ECF No. 18-4); and a copy of the initial Complaint, with all of the text stricken. (ECF No. 18-5.)  The proposed Second Amended Complaint cures some of the deficiencies in the first Amended Complaint, such as the signature requirement. (ECF Nos. 18, 18-1 at 27.)  The Court notes that although Brent has not perfectly complied with Local Rule 103.6(c), her filings indicate an attempt to do so.  Further, "a court has discretion to consider a motion for leave to amend, even if made improperly, so long as the moving party's failure to observe the correct procedures does not prejudice the opposing party."  *Smith v. Treasury Inspector Gen. for Tax Admin.*, Civ. No. JKB-11-2033, 2012 WL 11110, at *2 (D. Md. Jan. 3, 2012), *aff'd sub nom. Smith v. Treasury Inspection Gen. for Tax Admin.*, 474 F. App'x 929 (4th Cir. 2012). Here, the Court finds that Brent's attached proposed Second Amended Complaint (ECF No. 18-1) provides a sufficiently clear indication of the claims she seeks to assert.  Indeed, both the Cumberland Defendants and Allegany County have replied to the substance of Brent's claims set forth in the proposed Second Amended Complaint.  (*See* Cumberland Defendants' Opp'n Mot. Leave File Amended Compl., ECF No. 21; Allegany Cnty. Mot. Dismiss Second Amended Compl. or for Summ. J., ECF No. 24.) .

Amendment (Equal Protection of the Laws) and Defamation" against Officers Cramer and Roberts, the City of Cumberland, and Allegany County; "Intentional/Negligent Defamation and Harassment" against the Cumberland Defendants and the neighbor Defendants; "Intentional Infliction of Emotional Distress and Harassment" against all defendants; and "Violations of Article 46 of the Maryland State Constitution" against the City of Cumberland and Officers Cramer and Roberts. (ECF No. 18-1.) Brent seeks injunctive relief and compensatory and punitive damages. (*Id.* at 24–26.)

## II.    *Legal Standards*

In considering a motion to amend, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This language requires courts to "liberally allow amendment and deny such leave only in cases of prejudice, bad faith, or futility[.]" *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citations and quotations omitted). District courts may "deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *Id.* Thus, the Court considers the proposed Second Amended Complaint under the ordinary standard for dismissal under Federal Rule of Civil Procedure 12(b)(6).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers

7

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'
Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual
enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).[6]

While federal courts must liberally construe a *pro se* litigant's claims, this requirement
"does not transform the court into an advocate[.]" *United States v. Wilson*, 699 F.3d 789, 797 (4th
Cir. 2012). The Fourth Circuit has noted that while district courts may require "special judicial
solicitude," "a district court is not required to recognize 'obscure or extravagant claims defying
the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391
(4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)).

### III.    City of Cumberland Defendants

Brent's proposed Second Amended Complaint seeks to bring claims against the
Cumberland Defendants under the U.S. Constitution, Maryland common law, and the Maryland
Constitution. The Cumberland Defendants oppose Brent's Motion to File a Second Amended
Complaint, arguing that it would be futile. (ECF No. 21.) The Court will first address the federal
claims—brought pursuant to 42 U.S.C. § 1983—before turning to the state law claims. For the
reasons explained below, it will grant Brent's Motion for Leave to File a Second Amended
Complaint only as to the equal protection claim against Officers Cramer and Roberts in their
personal capacities. It will deny the Motion to File a Second Amended Complaint as to the claims
against Officers Cramer and Roberts in their official capacities, as well as all claims against Officer

---

[6] Brent has also filed a Motion to Permit Filing of Video Recordings as a Physical Exhibit to substantiate some of the
allegations in her proposed Second Amended Complaint. (ECF No. 31.) Applying the Rule 12(b)(6) standard to
determine whether a proposed amendment would be futile under Rule 15, the Court considers the legal sufficiency of
the allegations contained in the proposed amended complaint, accepting those factual allegations as true, and does not
weigh evidence. *See Rohan v. Networks Presentation LLC*, 192 F. Supp. 2d 434, 437 (D. Md. 2002) ("[O]n a motion
to dismiss, the court's role is not to weigh the evidence or assess plaintiff's credibility, but rather to accept plaintiff's
assertions as true."). Accordingly, considering video evidence at this phase of the litigation would be improper, and
Brent's Motion (ECF No. 31) will be denied without prejudice.

Bennett and the City of Cumberland. Because "[i]t is well settled that an amended pleading supersedes the original," *Dykes v. Portfolio Recovery Assocs., LLC*, 306 F.R.D. 529, 530 (E.D. Va. 2015) (citing *Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001)), the equal protection claim against Officers Cramer and Roberts in their personal capacities is the only surviving claim as to the Cumberland defendants. The Cumberland Defendants' Motion to Dismiss the original Complaint (ECF No. 8) and Motion to Strike the (first) Amended Complaint (ECF No. 16) will be denied as moot. *See id.* ("[M]otions directed at superseded pleadings must be denied as moot.").

### A. Section 1983 Claims

Brent brings suit pursuant to 42 U.S.C. § 1983 against the City of Cumberland and Officers Cramer, Roberts, and Bennett in both their personal and official capacities. (ECF No. 18-2, at 2–3, 8.) "[Section] 1983 allows 'a party who has been deprived of a federal right under the color of state law to seek relief.'" *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 538 (D. Md. 2021) (quoting *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999)). To state a personal liability claim under § 1983, a plaintiff must allege that (1) a person acting under color of state law committed the conduct complained of, and (2) the conduct deprived the plaintiff of rights secured by the laws of the United States or the Constitution. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 719 (4th Cir. 1991). Liability against a city (or county) may arise when a city employee's constitutionally offensive conduct is performed in furtherance of some municipal "policy or custom" of the city. *Milligan v. Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)).

"While personal-capacity suits [under § 1983] 'seek to impose personal liability upon a government official for actions he takes under color of state law,' official-capacity suits, in

9

contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Victors v. Kronmiller*, 553 F. Supp. 2d 533, 544 (D. Md. 2008) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, the Court will treat Brent's claims against the officers in their official capacities as claims against the City of Cumberland. *See Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

### *1. Malicious Prosecution*

Brent first brings a Fourth Amendment claim for malicious prosecution against Officer Cramer. A § 1983 malicious prosecution claim is "founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." *Smith v. Munday*, 848 F.3d 248, 252–53 (4th Cir. 2017) (quoting *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000)). To plead such a claim, a plaintiff must plausibly allege that "(1) the defendant seized the plaintiff pursuant to legal process not supported by probable cause, and (2) the criminal proceedings terminated in the plaintiff's favor." *Salley v. Myers*, 971 F.3d 308, 312–13 (4th Cir. 2020) (footnote omitted), *abrogated on other grounds by Thompson v. Clark*, 142 S. Ct. 1332 (2022). This claim, as alleged in the proposed Second Amended Complaint, fails.

Here, Brent does not allege in the proposed Second Amended Complaint that she was ever arrested or otherwise seized within the meaning of the Fourth Amendment. "A person is seized by the police . . . when the officer, by means of physical force or show of authority, terminates or restrains [her] freedom of movement[.]" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotations omitted). "A summons to answer charges on a criminal complaint is not, by itself, a seizure under the Fourth Amendment." *Myers v. Shaver*, 245 F. Supp. 2d 805, 812 (W.D. Va. 2003). The proposed Second Amended Complaint alleges only that "[i]n the early morning of

June 25, 2021, Defendant Duncan Cramer filed a criminal complaint against [Brent]" and that "[t]he Commissioner subsequently filed criminal charges against [her] on June 26, 2021[,]" for which she cites the criminal summons she received. (ECF No. 18-1 at 2 (citing Ex. 3 (Criminal Summons, ECF 11-4 at 4).) She does not allege that her freedom of movement was ever restrained by physical force or a show of authority. Thus, Brent has not alleged that she was "seized" as needed to state a § 1983 malicious prosecution claim. Accordingly, Brent's § 1983 malicious prosecution claim against Officer Cramer cannot withstand Rule 12(b)(6) scrutiny and the amendment would be futile.

The claim likewise fails against the City of Cumberland, "because 'a municipality may not be found liable for a constitutional violation in the absence of an unconstitutional act on the part of at least one individual municipal actor.'" *Orgain v. City of Salisbury, Md.*, 305 F. App'x 90, 102 (4th Cir. 2008) (quoting *Int'l Ground Transp. v. Mayor and City Council of Ocean City, Md.*, 475 F.3d 214, 219 (4th Cir. 2007)). Therefore, the Court will deny leave to amend the Complaint as to the § 1983 malicious prosecution claim.

### 2. *Equal Protection*

Brent's amended claim under the Equal Protection Clause of the Fourteenth Amendment against Officers Cramer and Roberts is not futile, and thus she will be granted leave to amend the Complaint as to this claim against these two officers in their personal capacities. However, her claim against the City of Cumberland would be futile, and thus she will be denied leave to amend the Complaint as to this claim against the City of Cumberland.

### a. *Personal Capacity Claims*

"The Equal Protection Clause of the Fourteenth Amendment prohibits police officers from selectively enforcing laws based on race." *Johnson v. Holmes*, 782 F. App'x 269, 276–77 (4th

Cir. 2019) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). To state an equal protection claim, a plaintiff must plead sufficient facts to allow the court to reasonably infer "that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Victors*, 553 F. Supp. at 547–48 (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).

A claim of unlawful discrimination in the enforcement of criminal laws requires "more than . . . that others have violated the law and are not being prosecuted"; rather, a plaintiff must allege "a deliberate selective process of enforcement based upon race (or other arbitrary classification)." *Butler v. Cooper*, 554 F.2d 645, 646 (4th Cir. 1977). A plaintiff must allege that the impermissible consideration was at least "one of several factors" motivating the challenged action. *Orgain*, 305 F. App'x at 98. Discriminatory intent can be shown through both direct and circumstantial evidence. *El Ali v. Barr*, 473 F. Supp. 3d 479, 516 (D. Md. 2020). A plaintiff need not show that the officers' actions were objectively unreasonable, but objective unreasonableness can be circumstantial evidence of discriminatory intent. *See Orgain*, 305 F. App'x at 99 ("While proof of objective unreasonableness, the touchstone of a Fourth Amendment violation, would be probative on the issue of discriminatory intent in the Equal Protection context, objective unreasonableness is not a stand-alone element of an Equal Protection claim.").

Liberally construing the proposed Second Amended Complaint, Brent sufficiently alleges differential treatment in the enforcement of disturbing the peace laws against her as compared to similarly situated individuals. *See, e.g.*, *Eberhart v. Gettys*, 215 F. Supp. 2d 666, 675–76 (M.D.N.C. 2002) (denying defendants' motion for summary judgment where the plaintiffs' proof they were treated differently from other businesses included "multiple noise citations and police visits they received regarding the noise of the club" and no one else had received a criminal noise

citation). As the Court construes it, the gravamen of Brent's equal protection claim is that Officers Cramer and Roberts selectively enforced laws relating to harassment and disturbing the peace against her and failed to offer her assistance, which she contrasts to their treatment of her white neighbors, particularly Parks.[7]  (*See generally* ECF 18-1 at 5–16.)

Brent alleges that, while Parks had been told by officers on other occasions to stop disturbing her peace, "the only incident in which defendant Parks was not admonished was the one involving defendants Cramer and Roberts." (*Id.* at 9.)  Officer Cramer allegedly told her not to record Parks or call the police again, and both he and Officer Roberts ignored her complaints regarding "Parks' disturbing behavior" and did not provide her with assistance.  (*Id.* at 5, 6–7.) Officer Cramer subsequently filed a criminal complaint against her, supported by Officer Roberts's reports, in which Officer Cramer "claimed . . . that [Brent] committed the same crimes [she] informed him [her] racist neighbors had committed against [her:] 'Harassment' and 'Disturbing the Peace.'" (*Id.* at 6–7, 15, 12.)  Brent further alleges that, despite Officers Cramer and Roberts's inaction, the State of Maryland did file criminal charges against Parks on January 18, 2022 after she filed an Application for Statement of Charges relating to the events on June 20, 2021 and other incidents. (*Id.* at 6.)

Drawing all reasonable inferences in Brent's favor, she also sufficiently alleges that the disparate treatment was the result of intentional discrimination. *See, e.g., Victors*, 553 F. Supp. 2d at 548–49 (denying motion to dismiss where court could plausibly infer that the discriminatory enforcement of rules and regulations against assisted living facility was motivated by the plaintiff's race based on the allegation that the plaintiff was the first African American to own the facility

---

[7] The Cumberland Defendants have not squarely responded to Brent's claim construed this way, and merely argue that she does not "allege any selective enforcement of the law." (ECF No. 21 at 6 (citing *Sow v. Fortville Police Dept.*, 636 F.3d 293, 303 (7th Cir. 2011)).)  The Cumberland Defendants will have an opportunity to address this argument in any responsive pleadings to the Second Amended Complaint.

and other allegations not directly related to the plaintiff's race, such as a hostile statement, extreme decision to remove residents, and fabrication in reports). First, the allegations permit an inference that the neighbors with whom she was in conflict were motivated by racial animus, including police reports stating that Parks has shouted racist slurs and that Van and Cynthia Gaus are "self-acknowledged Nazi[s]." (*Id.* at 7, 9.) Second, the allegations permit an inference that Officers Cramer and Roberts have personal ties to these neighbors, including references in two police reports to personal conversations between these neighbors and Officers Cramer and Roberts and that Cynthia Gaus called Officer Cramer by his first name. (*Id.* at 14.) Brent also alleges that on one occasion Officers Roberts and Cramer "laughed at [her] along with . . . Van and Cynthia Gaus." (*Id.* at 7.) She alleges that Officers Cramer and Roberts treated her "in a dismissive, disrespectful, and rude manner" while treating her white neighbors in a "courteous and respectful manner at all times." (*Id.* at 15.) Construed in the light most favorable to Brent, her allegations that Officers Cramer and Roberts treated her in a disrespectful manner, contrasted with friendly interactions with her neighbors—particularly when she was seeking police assistance due to the neighbor's harassment involving racist slurs—reasonably permit an inference, albeit barely, that race was at least a motivating factor in the officers' differential treatment of her.

Alternatively, Brent alleges "at least a bias in the form of friendship between defendants Cramer, Roberts, Van and Cynthia Gaus." (*Id.*) An equal protection violation can also be stated under a "class-of-one" theory "if it can be shown that the government's action constituted 'irrational and wholly arbitrary' discrimination of that individual." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 82 (4th Cir. 2016) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000)). Plaintiff has plausibly alleged that Officers Cramer and Roberts irrationally and arbitrarily selectively enforced the law against her based on their personal relationships to her

neighbors and the neighbors' conflict with Brent. Thus, Brent has plausibly alleged a theory-of-one equal protection claim.

Accordingly, given that there is no disagreement that Officers Cramer and Roberts were acting under color of state law, the § 1983 equal protection claim is not futile and Brent will be allowed to amend her complaint as to the equal protection claim against Officers Cramer and Roberts in their personal capacities.

### b.  Claim Against City of Cumberland

Brent's selective enforcement claim fails, however, against Officers Cramer and Roberts in their official capacity, as well as against the City of Cumberland.

Under § 1983, a municipality cannot be liable for its employees' federal constitutional torts on a *respondeat superior* basis but may be liable when official municipal policy causes a constitutional tort. *Monell*, 436 U.S. at 690–91. To state a § 1983 claim against a municipality, also known as a *Monell* claim, a plaintiff must allege (1) "a constitutional harm that stems from the acts of a municipal employee taken in furtherance of some municipal policy or custom," (2) "facts showing that the policy's creation is fairly attributable to the municipality," and (3) "an affirmative causal link between the policy or custom, and the particular injury suffered by the plaintiff." *Wash. v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 532 (D. Md. 2020) (internal quotation marks omitted) (citing *Milligan*, 743 F.2d at 229; *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987)). A policy or custom can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

Brent does not sufficiently plead the elements of *Monell* liability as to the equal protection claim against the City of Cumberland. In her proposed Second Amended Complaint, Brent alleges that "the City of Cumberland has a policy/custom of supporting police officers who believe their racist friends are more credible than a black law abiding citizen" and "a policy/custom that favors white racists over a law abiding black citizen with proof that she is being harassed." (ECF 18-1 at 7, 11–12). She points to at least two statements other police officers have made about her as examples that the City "readily accepts negative characterizations of a black citizen by white citizens who are racists." (*Id.* at 8–9.) Finally, she alleges that the "City of Cumberland has a policy/custom which allows a disgruntled angry officer to return to a scene where earlier that day he behaved in an unprofessional and discriminatory manner towards a black female." (*Id.* at 11.)

These allegations essentially cast the specific incidents of which Brent complains as an official policy or custom. Such bare assertions of a "policy/custom," devoid of factual support, do not suffice to state a *Monell* claim. *See, e.g., Hicks v. Anne Arundel Cnty.*, Civ. No. JKB-20-0022, 2020 WL 7624773, at *6 (D. Md. Dec. 22, 2020) (dismissing *Monell* claim based on "unsubstantiated legal assertions" that "the County had 'a policy and or custom of allowing and encouraging investigations, arrests, indictments and prosecutions that are not based on probable cause, [and] that are based on false and misleading information'"); *Davis v. McDermott*, Civ. No. WMN-07-1457, 2007 WL 9782460, at *2 (D. Md. Sept. 21, 2007) (dismissing *Monell* claim consisting of "the bare conclusory allegation" that detective's actions were "unchecked and/or uncorrected by his superiors, or acknowledged and condoned by these superiors" without alleging what the policy was or any similar incidents).

16

Brent appears to argue that a policy or custom exists based on either a failure to train or through condonation. (Reply Mot. Leave File Second Amended Compl., ECF No. 23, at 2 (asserting that she "described numerous incidents" that were frequent enough to reveal "a custom of 'deliberate indifference' in supervision, discipline and/or training of the City's officers").) The proposed Second Amended Complaint does not include factual allegations to support either of these theories.[8]

First, Brent "fails to allege a specific deficiency in the [City's] training program, let alone, the [City's] knowledge and disregard of that deficiency" as required to allege *Monell* liability through a failure to train. *Krell v. Queen Anne's Cnty.*, Civ. No. JKB-18-637, 2018 WL 6523883, at *16 (D. Md. Dec. 12, 2018). Nor has Brent stated a *Monell* claim under a condonation theory, which requires a plaintiff to allege a "persistent and widespread" practice so longstanding and pervasive as to indicate that "policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014) (quotations omitted); *compare id.* at 403–04 (plaintiff pled sufficient factual content to state a *Monell* condonation claim by pointing to prior cases and prior successful motions on similar facts to support allegation of persistent and widespread practice), *with Krell*, 2019 WL 6523883, at *16 (plaintiff did not state a *Monell* condonation claim where "Plaintiff allege[d] no other incidents like those he experienced"). It is not enough to allege the instance at hand and infer that it is part of a broader practice. *Walker v. Prince George's Cnty.*, 575 F.3d 426, 431 (4th Cir. 2009); *see also Milligan*, 743 F.2d at 230 ("[A]

---

[8] To the extent Brent brings in new factual allegations in her Reply, "[i]t is well-established that parties cannot amend their complaints through briefing[.]" *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). The Court will only consider the facts alleged in the proposed Second Amended Complaint itself.

municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees.").[9] Not only has she failed to allege other incidents giving rise to a "persistent and widespread" practice, she specifically alleges that *"the only incident* in which defendant Parks was not admonished was *the one involving defendants Cramer and Roberts*[.]" (*Id.* at 9 (emphasis added).)

Accordingly, Brent has not successfully pleaded an equal protection *Monell* claim.[10] The Court will deny leave to amend the Complaint as to the equal protection claim against the City of Cumberland and against Officers Cramer and Roberts in their official capacities.

### B. Defamation

Brent next brings a Maryland common law defamation claim against the Cumberland Defendants. "Under Maryland law, to present a prima facie case of defamation, a plaintiff must establish four elements: (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 935 A.2d 719, 723–24 (Md. 2007). "A defamatory statement is one 'which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person.'" *Id.* at 724 (quoting *Gohari v. Darvish*, 767 A.2d 321, 327 (2001)).

---

[9] While Brent claims that she alleges "numerous incidents during which police officers violated [her] constitutional rights," (ECF 23 at 2), most of the interactions she recounts do not contain allegations rising to a constitutional violation. Further, she does not allege that any similar incidents occurred to others such that this Court can infer that the practice was sufficiently widespread and longstanding.

[10] In her Reply brief, Brent also discusses Andrea Bennett's traffic complaint as a selective enforcement of the laws in violation of her right to equal protection. (ECF No. 23 at 3–4, 6–7.) In the proposed Second Amend Complaint, however, the equal protection claim does not include any allegations about Officer Bennett or the traffic complaint (*see* ECF 18-1 at 5–17), and Brent cannot recharacterize her claims in her briefing. Further, even considering this conduct, Brent has not alleged that others similarly situated to her were treated differently in relation to traffic laws.

Defamation claims against the Cumberland Defendants appear in two places in the proposed Second Amended Complaint, though they are substantively similar. First, Brent styles one of her claims as "Violations of the Fourteenth Amendment (Equal Protection of the Laws) and Defamation." (ECF 18-1 at 5.) It is not clear what exactly she alleges as defamatory statements, as there are several references to allegedly false statements throughout this section of the proposed Second Amended Complaint. (*See, e.g., id.* at 10 ("Cumberland City Police Officers have routinely submitted defamatory police reports that contain blatant lies, half truths, and portray me as someone who is mentally unstable.").) Second, under the heading "Intentional/Negligent Defamation and Harassment,"[11] Brent alleges that the Cumberland Defendants "included vicious lies and/or formed conclusions unsupported by fact" in police reports and criminal complaints that were intended to discredit her character. (*Id.* at 17.)

The Cumberland Defendants argue that Brent's defamation claims, based on events that happened in June 2021, are barred by the one-year statute of limitations, and incorrectly assert that Brent did not file her initial Complaint until September 2022. (ECF No. 21 at 5–6 (citing ECF No. 1).) Brent counters that she asserted her defamation claim in the initial Complaint, (ECF No. 23 at 5), which was filed on June 3, 2022.[12] (ECF No. 1.)

---

[11] As this Court has previously recognized, it "knows of no general tort of 'harassment' recognized in Maryland." *Knox v. Mayor & City Council Baltimore City*, Civ. No. JKB-17-1384, 2017 WL 5903709, at *13 (D. Md. Nov. 30, 2017) (citing *Davidson-Nadwodny v. Wal-Mart Associates, Inc.*, Civ. No. CCB-07-2595, 2008 WL 2415035, at *3 (D. Md. June 3, 2008)). Accordingly, the Court will treat this claim as a claim for defamation only.

[12] To the extent the proposed Second Amended Complaint asserts new claim(s) for defamation, those additional claims would "relate[ ] back to the date of the original pleading" for statute of limitations purposes if the new claim(s) "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B). Under this rule, "[a] plaintiff may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act [of defamation] that occurred during that time period." *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862 (Table), 1999 WL 89125, at *3 (4th Cir. 1999). Because the Court is not able to discern separate instances of defamation that are specifically alleged, as discuss below, it does not reach the issue of whether any new claims "relate back" to the date of the original Complaint.

Regardless of any statute of limitations issue, however, the proposed Second Amended Complaint lacks the requisite detail to state a claim for defamation. "Every alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege.'" *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011) (quoting *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862 (Table), 1999 WL 89125, at *3 (4th Cir. 1999)). This includes the "time, place, content, speaker, and listener of the alleged defamatory matter." *English Boiler*, 1999 WL 89125, at *3 (quoting *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996)).

Brent must allege more than that a series of police reports contained "lies" or allegedly defamatory statements to survive a motion to dismiss. *Cf. Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 368 (D. Md. 2017) (denying motion to dismiss where amended complaint alleged "to whom the statement was published, approximately when the statement was made, the content of the statement, and that an employee of [the defendant company] published it").

The only specific "lie" that Brent specifically alleges one of the Cumberland Defendants made is Officer Cramer's statement in a police report that "[Brent] also stated that she was sprayed with pepper spray by [a neighbor's] cat while she was gardening."[13] (ECF 18-1 at 10.) As a matter of law, this statement is not defamatory—i.e. it would not "tend[ ] to expose [Brent] to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with," her. *Offen*, 935 A.2d at 724. Nor has she alleged how this

---

[13] The proposed Second Amended Complaint also references specific statements two other police officers, not named as defendants in this action, allegedly made in police reports. (*See* ECF 18-1 at 8–10.) Brent does not seem to be asserting defamation claims based on these statements, but rather includes them to in attempt to establish the City's *Monell* liability as examples that "[t]he City of Cumberland also readily accepts negative characterizations of a black citizen by white citizens who are racists." (*Id.* at 8.)

statement specifically, even if not a true reflection of what she said, caused her any harm. *Offen*, 935 A.2d at 723–24.

Accordingly, Brent's amendments relating to defamation against the Cumberland Defendants would be futile, and the Court will deny leave to amend the Complaint with these claims.

### C. Intentional Infliction of Emotional Distress

Brent next brings an IIED claim against the Cumberland Defendants. A claim of IIED has four elements: (1) intentional or reckless conduct that is (2) extreme and outrageous and is (3) causally connected to the emotional distress, which is (4) severe. *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000).

Brent's IIED claim is based on the traffic complaint Officer Bennett filed against her in October 2021, which she alleges was "a cruel act of retaliation, racism and harassment" in conspiracy with Officers Cramer and Roberts, as well as Van and Cynthia Gaus, that was "intended to inflict severe emotional distress on [her] during the holidays." (ECF 18-1 at 19–20.) She further alleges that it "caused [Brent] to suffer significant physical and emotional distress[,]" (ECF 18-1 at 22), and that she "continue[s] to receive therapy relating to the anxiety condition that this situation has caused" her. (*Id.* at 23.)

Brent has not alleged facts to substantiate the conclusory assertion that Officer "Bennett's decision to file traffic charges consisted of a premeditated conspiracy to retaliate against [Brent] on behalf of defendants Cramer, Roberts, and their Nazi friends[,]" and that "[t]he traffic charges were a failed setup effort that included staged events and lies." (*Id.* at 20.) She merely alleges that the traffic complaint was initiated in part by Van and Cynthis Gaus and referenced other incidents involving Brent and her neighbors as reported by Officers Cramer and Roberts, and that Officer

Bennett likely knew about Brent's misconduct complaint against Officers Cramer and Roberts. (*Id.* at 19–20.) These allegations are not sufficient to permit an inference that the conduct surrounding the traffic complaint was not a legitimate law enforcement action, let alone that any of the defendants' conduct was "extreme and outrageous." *See Gibbons v. Bank of Am. Corp.*, Civ. No. JFM-08-3511, 2012 WL 94569, at *8 (D. Md. Jan. 11, 2012) ("To be outrageous, conduct must be 'so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977))).[14]

Additionally, Brent fails to plausibly allege facts to support an inference that she suffered severe emotional distress as a result of the Cumberland Defendants' conduct. "The fourth element of [IIED] 'requires the plaintiff to show that [s]he suffered a severely disabling emotional response to the defendant's conduct.'" *Caldor, Inc. v. Bowden*, 625 A.2d 959, 964 (Md. 1993) (quoting *Harris*, 380 A.2d at 616). The plaintiff's "distress [must be] so severe that 'no reasonable [person] could be expected to endure it.'" *Thacker v. City of Hyattsville*, 762 A.2d 172, 197 (Md. Ct. Spec. App. 2000) (quoting *Harris*, 380 A.2d at 616).

Brent's allegations relating to the "significant physical and emotional distress" caused by the alleged conduct and resulting "anxiety condition" for which she continues to receive therapy (ECF 18-1 at 22–23), while understandably difficult for her, do not have the requisite severity necessary to sustain a claim for IIED under Maryland law. *See, e.g., Hanna v. Emergency Med. Assocs.*, 551 A.2d 492, 499 (Md. Ct. Spec. App. 1989) (finding no severe emotional distress where

---

[14] In her response, Brent draws on all of the complained of conduct—including that underlying her equal protection claim—as part of the IIED claim. (ECF 23 at 9). Brent cannot use her briefings to recharacterize her claims. Moreover, even considering allegations appearing elsewhere in the proposed Second Amended Complaint, the claim would fail for the reasons set forth below because nowhere does she allege emotional distress rising to the level of severity required to state a claim for IIED. (*See* ECF No. 18-1 at 17 (alleging that the conduct underlying her equal protection claim was "a source of tremendous anxiety and stress and has also led to severe insomnia and other physical health issues").)

plaintiff suffered from severe depression, humiliation, and anxiety); *Harris,* 380 A.2d at 617 (finding no severe emotional distress where plaintiff needed to see a physician and suffered from humiliation, an aggravated nervous condition, and worsened speech impediment).

Accordingly, Brent's proposed Second Amended Complaint would be futile as to the IIED claim against the Cumberland Defendants and the Court will deny her leave to amend the Complaint as to this claim.

### D. *Article 46 of the Maryland Constitution*

Brent next brings a claim under Article 46 of the Maryland Declaration of Rights, which states that "[e]quality of rights under the law shall not be abridged or denied because of sex." Article 46 prohibits "sex discrimination that is imposed 'under the law,' *i.e.*, by direct government action[.]" *Burning Tree Club, Inc. v. Bainum*, 501 A.2d 817, 827 (Md. 1985).

Brent has not alleged sufficient factual content for the Court to infer any discriminatory government action based on her sex. She alleges that "Defendants the City of Cumberland, Duncan Cramer, and Joshua Roberts displayed total bias for a male resident of Maryland over [Brent], a female resident of Maryland." (ECF 18-1 at 23.) Her claim consists of allegations that the City and Officers Cramer and Roberts disregarded "an extensive police record and videos revealing this male resident shouting sexist slurs at [Brent]" and "revealing his private parts." (*Id.*) She further alleges that as a result of "accept[ing] this man's negative characterizations of" Brent, she was "inappropriately labeled mentally unstable, charged criminally, and pressured to submit to a mental health evaluation in an effort to have partially gender biased charges against [her] dropped." (*Id.*) The fact that the neighbor with whom Brent was in conflict is a male does not alone permit a reasonable inference that officers discriminated against Brent *because of* her sex or that the charges against her were "gender biased."

Accordingly, Brent's Motion to file a Second Amended Complaint by adding a claim pursuant to Article 46 will be denied as futile.

### IV.   *Neighbor Defendants*

For the first time in the proposed Second Amended Complaint, Brent adds claims against Robert Parks, Van Gaus, Cynthia Gaus, and Alexia Gaus.  Specifically, the proposed Second Amended Complaint asserts claims for defamation and IIED against these neighbor Defendants. The Court concludes that these claims could not survive a motion to dismiss, and accordingly will deny Brent leave to amend the Complaint to add the individual neighbor Defendants.

#### A. *Defamation*

Brent brings the same general allegations against the three neighbor Defendants as against the Cumberland Defendants about "vicious lies and/or . . . conclusions unsupported by fact as revealed in police reports, criminal and other complaints illustrated in this motion." (*Id.* at 17.) This amendment adding the neighbor Defendants would be futile for the same reasons discussed in Section III.B. *supra.*

Brent's allegations regarding statements Alexia Gaus made at her former place of employment in the spring of 2021 (*see id.* at 18) would also be futile.  Brent fails to identify what the allegedly defamatory statements were, which both fails to adequately plead a claim for defamation, *Gainsburg*, 838 F. Supp. at 344, and does not allow the Court to assess whether it is "so related" to the federal law claims "that they form part of the same case or controversy" such that the Court may properly exercise supplemental jurisdiction over the state law defamation claim. 28 U.S.C. § 1367(a).  Therefore, allowing Brent to amend her Complaint to add this claim would be futile.

### B.  IIED

Brent asserts the same IIED claim against the neighbor Defendants as against the Cumberland Defendants. (ECF 18-1 at 19–23.) The Court will deny leave to amend the Complaint adding the neighbor Defendants as futile for the same reasons provided in Section III.C. *supra.*

### V.  *Defendant Allegany County*

Rather than opposing Brent's Motion for Leave to File an Amended Complaint (ECF No. 18), Alleghany County filed a Motion to Dismiss the Second Amended Complaint or, in the Alternative, for Summary Judgment. (ECF No. 24.) The Second Amended Complaint was not the operative complaint, because the Court had not granted Brent leave to file it. However, Brent has responded to Alleghany County's Motion, (ECF No. 28), and the standard the Court applies in determining futility and resolving a motion to dismiss are the same. Accordingly, for purposes of Allegany County's Motion, the Court will treat Brent's proposed Second Amended Complaint as the operative complaint, as if the Court had granted Brent's Motion to File a Second Amended Complaint. (ECF No. 18.) Most recently, Brent notified the Court that she has "decided to NOT oppose defendant Allegany County Board of County Commissioner's request to have the case against them dismissed." (ECF No. 33 at 2.)[15] The Court will nevertheless briefly address the arguments contained in Alleghany County's Motion, construing it as a motion to dismiss and concluding that Brent has failed to state claims for which relief may be granted.[16]

---

[15] Technically, this response to Allegany County's Reply was a surreply requiring the Court's leave to file under Local Rule 105.2(a).  Courts have used their discretion to permit *pro se* parties to file surreplies, however, even where no new matters were raised in the reply brief. *See, e.g., Williams v. Bartee*, Civ. No. CCB-10-935, 2011 WL 2842367, at *2 (D. Md. July 14, 2011), *aff'd sub nom. Williams v. Merritt*, 469 F. App'x 270 (4th Cir. 2012). The Court will construe this filing as a motion for leave to file a surreply and permit the surreply, given that it does not prejudice Allegany County.

[16] Because the Court resolves Allegany County's Motion on Rule 12(b)(6) grounds, it will deny as moot the County's Motion to Permit Filing of Audio/digital Recordings as a Physical Exhibit. (ECF No. 26.)

### A. *Equal protection*

Brent's equal protection claim against Allegany County stems from the allegation that Allegany County denied her emergency assistance after she filed a police misconduct complaint. She alleges that the Allegany County emergency assistance dispatcher "stated that [the dispatcher] was informed [Brent] had recently filed a police misconduct complaint against defendants Cramer and Roberts" and "that Allegany County was directed by the City of Cumberland to not provide [her] any assistance." (ECF 18-1 at 13.) Brent alleges that when she further questioned the dispatcher, the dispatcher "stated that this is a policy of Allegany County." (ECF 18-1 at 16.)

Brent's barebones allegation does not provide sufficient factual content allowing the Court to infer an "express policy" or "decision[ ] of a person with final policymaking authority[.]" *Lytle*, 326 F.3d at 471. Nor can the Court infer a policy or custom based on a single incident during which Brent spoke with Allegany County dispatchers. *See Walker*, 575 F.3d at 431. Accordingly, the proposed Second Amended Complaint fails to plead a claim of *Monell* liability against Allegany County.

### B. *IIED*

The Court will grant Allegany County's motion to dismiss Brent's IIED claim for the same reasons the Court set out in Section III.C. *supra*. In addition to the deficiencies noted above, the allegations underlying the IIED claim make almost no mention of actions taken by Allegany County. (*See* ECF 18-1 at 19–23.) The Court need not address Allegany County's claimed common law governmental immunity (*see* ECF No. 24–1 at 9–11), having dismissed Brent's entire claim for IIED on other grounds.

### VI.    *Motion for an Appointed Attorney*

Finally, Brent's Motion to Request a Court Appointed Pro Bono Attorney (ECF No. 22) will be denied. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances. *See Harris v. Salley*, 339 F. App'x 281, 284 (4th Cir. 2009) ("[T]here is no absolute right to appointment of counsel; a plaintiff must present 'exceptional circumstances.'" (quoting *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987))). "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id.*

Upon careful consideration of the motions and previous filings by Brent, the Court finds that she has demonstrated the wherewithal to either articulate the legal and factual basis of her claims herself or secure meaningful assistance in doing so. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Brent under § 1915(e)(1). Brent's Motion will be denied without prejudice.

### VII.    *Conclusion*

For the reasons set forth above, a separate Order will issue granting in part Brent's Motion for Leave to File a Second Amended Complaint (ECF No. 18) as to the equal protection claim against Officers Cramer and Roberts in their personal capacities. This claim as set forth in the proposed Second Amended Complaint (ECF No. 18-1) is the only claim remaining in the case. Brent's Second Amended Complaint (ECF No. 18-1), to the extent that it asserts an equal protection claim against Officers Cramer and Roberts, is therefore the operative complaint in this matter. The Second Amended Complaint will be "deemed to have been served, for the purpose of

determining the time for response under Fed. R. Civ. P. 15(a), on the date" of this Memorandum and accompanying Order. Local Rule 103.6(a) (D. Md. 2021).

The Court will deny Brent's Motion to Amend (ECF No. 18) as to the claims against the City of Cumberland, Officers Cramer and Roberts in their official capacities, Officer Bennett in her personal and official capacities, and Defendants Robert Parks, Van Gaus, Cynthia Gaus, and Alexia Gaus. It will grant Allegany County's Motion to Dismiss (ECF No. 24) and will deny as moot its Motion to Permit Filing of Audio/Digital Recordings as a Physical Exhibit. (ECF No. 26.) It will deny without prejudice Brent's Motion for a Court Appointed Attorney (ECF No. 22) and Motion to Permit Filing of Video Recordings as a Physical Exhibit. (ECF No. 31.) Finally, it will deny as moot the Cumberland Defendants' Motion to Dismiss (ECF No. 8) and Motion to Strike the (first) Amended Complaint. (ECF No. 16.)

DATED this _10_ day of March, 2023.

BY THE COURT:

_James K. Bredar_

James K. Bredar
Chief Judge