IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DEBRA J. BRENT,** | * | |
| **Plaintiff,** | * | |
| v. | * | **Civ. No. JKB-22-1349** |
| **CITY OF CUMBERLAND POLICE DEPARTMENT,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Before the Court are Defendants' Motion for Summary Judgment (ECF No. 38) and Plaintiff's Motion for Leave to File a Third Amended Complaint (ECF No. 41). For the following reasons, both motions will be denied. A separate Order will issue.

## I.   BACKGROUND AND PROCEDURAL HISTORY[1]

This case ultimately stems from Ms. Brent's longstanding feud with her neighbors. (*See generally* Second Am. Compl., ECF No. 18-1.) As a result of this feud, Ms. Brent has regularly called 911 requesting assistance. (*Id.* at 2–3.) Defendants Cramer and Roberts (officers of the City of Cumberland Police Department) have responded to the calls and interacted with Ms. Brent and her neighbors, including on June 20, 2021, when many of the relevant allegations occurred. (*Id.* at 3–7.) Ms. Brent alleges that on June 20, 2021, as well as on other occasions, Officers Cramer and Roberts treated her poorly compared to their treatment of her neighbors. (*Id.* at 3–5, 14–15.) The Court previously held that Ms. Brent has plausibly alleged that this disparate

---

[1] The Court recounts the allegations here "in the light most favorable to the nonmoving party," as is appropriate when considering a motion for summary judgment. *Rutherford v. BMW of N. Am., LLC*, 579 F.Supp.3d 737, 745 (D. Md. 2022) (citing *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).

1

treatment stems either from Defendants' intentional discrimination against Ms. Brent because she is Black, or from Defendants' bias against Ms. Brent stemming from their friendship with her neighbors. (Mem., ECF No. 34 at 11–15.)

Ms. Brent alleges that Officer Cramer ignored reports describing Ms. Brent's neighbors' harassment of her and refused to view evidence of that harassment when Ms. Brent offered it. (Second Am. Compl., ECF No. 18-1 at 3–5.) She alleges that Officer Roberts only listened to the "racist" neighbors' version of events and failed to provide Ms. Brent with any assistance. (*Id.* at 6–7.) Ms. Brent alleges that certain of her neighbors are "self-acknowledged racists" and that the Defendants are friendly with those neighbors and treat them courteously, in contrast with their poor treatment of Ms. Brent. (*Id.* at 14–15.) Another officer has reportedly apologized for Defendants' behavior. (*Id.* at 5, 11.)

On June 24, 2021, Ms. Brent filed a police misconduct complaint regarding Officers Cramer and Roberts. (*Id.* at 5.) In retaliation, Officer Cramer filed a criminal complaint against Ms. Brent, supported by reports from Officer Roberts. (*Id.* at 2, 5, 7.) The State's Attorney dismissed the charges by entering a nolle prosequi on April 1, 2022. (Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 11-4 at 5.) By contrast, Defendants did not file charges against Ms. Brent's neighbor, despite his ongoing harassment of her. (Second Am. Compl., ECF No. 18-1 at 6–7.) This disparate treatment has caused Ms. Brent much stress, insomnia, and anxiety for which she is receiving therapy. (*Id.* at 17, 22–23.)

Ms. Brent initially filed suit on June 3, 2022 against the City of Cumberland Police Department, Allegany County Emergency Services, and Officer Andrea Bennett, in addition to Officers Cramer and Roberts in their official and individual capacities. (Compl., ECF No. 1.) The Defendants moved to dismiss that Complaint, (ECF No. 8); and the Court granted Ms. Brent leave

2

to file an amended complaint, (ECF No. 14), which she did file, (ECF. No 15). Defendants moved to strike the Amended Complaint, (ECF No. 16), and Ms. Brent requested leave to file a Second Amended Complaint, (ECF No. 18). The Second Amended Complaint added some of Ms. Brent's neighbors as defendants. *Id.* Ms. Brent also moved for a court-appointed attorney, (ECF No. 22), and the Defendants moved to dismiss the Second Amended Complaint, (ECF No. 24).

The Court considered the various Motions described above and granted and denied the Parties' requests such that, after the Court's March 10, 2023 Order, all of the Defendants and all of the claims were dismissed except an Equal Protection claim against Officers Cramer and Roberts in their individual capacities. (*See generally* Mem., ECF No. 34.) The Court held that Ms. Brent had stated an Equal Protection claim against Officers Cramer and Roberts under two possible theories. First, that Defendants intentionally discriminated against Ms. Brent because she is Black and second, that they discriminated against Ms. Brent because they are friends with her neighbors and biased against her. (*Id.*)

On March 27, 2023, Defendants Cramer and Roberts moved for summary judgment. (Defs.' Mot. for Summ. J., ECF No. 38.) Ms. Brent opposed that Motion, (ECF No. 40), and moved for leave to file a third amended complaint, (ECF No. 41). These motions are before the Court today and the Court will deny them.

## II. PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Ms. Brent moves to file a Third Amended Complaint so that she can "amend the requested damages to be awarded in the event of a jury finding in [her] favor." (Pl.'s Mot. for Leave, ECF

No. 41 at 2.) Ms. Brent's redline indicates that the proposed Third Amended Complaint simply changes the requested damages amounts. (Pl.'s Mot. for Leave, Ex. 2, ECF No. 41-2 at 9.)[2]

A plaintiff may amend a pleading "once as a matter of course" within twenty-one days of filing or within twenty-one days of receipt of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Those limits have long expired in this case. Thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

Ms. Brent's Third Amended Complaint is unnecessary and therefore futile. Ms. Brent has stated a claim upon which relief may be granted, (Mem., ECF No. 34), and her only purported justification for the amendment, an increase in damages, is not necessary. If this case goes to trial, there is no rule preventing a jury from awarding Ms. Brent more that she has requested in her operative complaint. *See Hetzel v. Cnty. Of Prince William*, 89 F.3d 169, 171 (4th Cir. 1996) (describing the standard for disturbing a jury award of compensatory damages without reference to the amount requested in the complaint); *see also Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1025 (7th Cir. 2016) ("Finally, we are aware of no rule prohibiting a jury from awarding more in damages than a plaintiff requests."). Damages are an element Ms. Brent must adequately plead, but she need not quantify them at this stage. *See* Fed. R. Civ. P. 8(a)(3) (requiring pleadings to

---

[2] Despite this, it appears that Ms. Brent has also added minor additional details regarding her claims against Officers Cramer and Roberts and removed allegations regarding claims and defendants that were dismissed or struck. (*Compare* Third Am. Compl., ECF No. 41-1 *and* Second Am. Compl., ECF No. 18-1.) But, since Ms. Brent only argues in favor of the amendment based on the change in requested damages, the Court will only address that argument. Nor is it necessary to address Ms. Brent's imperfect compliance with the local rules, (*see* Local Rule 103.6(c)), because her Motion will be denied regardless. However, the Court encourages Ms. Brent to carefully review the Local Rules as well as the Federal Rules of Civil Procedure and comply in the future.

4

include "a demand for the relief sought, which may include relief in the alternative or different types of relief"). There is no suggestion that the Defendants are not on notice that Ms. Brent seeks, among other things, money damages. Further, Ms. Brent's operative complaint also requests "such other and further relief as to the Court seems just and proper," leaving room for additional compensatory damages beyond the exact amounts pled. (Second Am. Compl., ECF No. 18-1 at 26.) Accordingly, the Third Amended Complaint is unnecessary and Ms. Brent's Motion for Leave to File Third Amended Complaint will be denied.

## III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants moved for summary judgment based on two arguments, each of which purport to dispose of one of Ms. Brent's remaining theories of liability. First, Defendants argue they are entitled to summary judgment on Ms. Brent's claim of racial discrimination because the undisputed material facts demonstrate that Ms. Brent was not discriminated against based on her race. (Defs.' Mot. for Summ. J., ECF No. 38-1 at 1–6.) Second, Defendants argue that they are entitled to qualified immunity regarding Ms. Brent's class-of-one theory. (*Id.* at 9.) Neither argument is availing, and Defendants' Motion will be denied. The Court will address each argument in turn below.

### A.   Racial Discrimination

#### 1.   Summary Judgment Legal Standard

Pursuant to Rule 56, a party can move for summary judgment on a claim or part of a claim if it shows "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to show that there is no genuine dispute of any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). When assessing a summary judgment motion, the Court views all facts and makes all

reasonable inferences in the light most favorable to the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). Further, "[s]ummary judgement should only be granted 'after adequate time for discovery.'" *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### 2. Analysis

Defendants' Motion lists eighteen "material facts that are not genuinely disputed" and relies on affidavits from the Defendants (and only from the Defendants) to support those facts.[3] (ECF No. 38-1 at 1–6.) Based on these purportedly undisputed facts, Defendants argue that Ms. Brent "cannot demonstrate that she is similarly situated from her neighbors or that laws were selectively enforced based on discrimination." (*Id.* at 9.) But, no discovery has taken place to date in this case. Because the Parties have not conducted discovery, the Defendants' Motion will be denied.[4]

Summary judgment is not generally appropriate before discovery has taken place. *McCray*, 741 F.3d at 483 (citing *Celotex*, 477 U.S. at 322). Usually, to defeat a summary judgment motion because more discovery is necessary, a party must submit an affidavit or declaration regarding the need for discovery. *See* Fed. R. Civ. P. 56(d). However, strict compliance with this

---

[3] The Court notes that, as discussed above, the Defendants have the burden to show that there are no materially undisputed facts. While Ms. Brent has not proffered rebuttal evidence at this time, the Court doubts that Defendants' "undisputed facts" are all truly beyond dispute. Defendants have not offered any evidence to bolster their alleged facts beyond their own statements. The Defendants' exhibits are simply affidavits from the Defendants themselves, attaching a single additional document, which was written by one of the Defendants and quotes the other. (Cramer Aff., Roberts Aff., ECF Nos. 38-2, 38-3.) The Court acknowledges that Defendants have offered affidavits while Ms. Brent has not (nor has she offered any functional equivalent or other admissible evidence). But Defendants' "because we said so" evidence is likely insufficient to grant summary judgment, even if their motion were not premature. *See Pfaller v. Amonette*, 55 F.4th 436, 450 (4th Cir. 2022) ("[The movant] offers his own statements as the key evidence in support of summary judgment. That is insufficient."); *Hairfield-Ulsch v. Montgomery Cnty.*, Civ. No. PWG-14-2418, 2015 WL 1405421, at *7 (D. Md. Mar. 25, 2015) ("[I]t is not appropriate to grant summary judgment on any of [the claims] before any discovery has taken place based on little more than a series of nearly identical, self-serving affidavits denying liability.").

[4] Defendants are permitted to move for summary judgment again after there has been sufficient time for discovery.

requirement is not necessary if the nonmoving party "has had little or no opportunity to conduct discovery" and "the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). In her opposition, Ms. Brent asserts that she deserves "an opportunity to ask questions and/or challenge any statements and testimony from these defendants in the form of interrogatories, depositions, and cross examinations." (Pl.'s Opp., ECF No. 40 at 10.) Given Ms. Brent's pro se status this statement is clear enough and an affidavit is not necessary in this circumstance. *See Pevia v. Hogan*, 443 F.Supp.3d 612, 627 (D. Md. 2020).

Further, "allowing a party enough time for discovery before summary judgment is particularly important when the other party has exclusive control of the relevant facts and when the case presents questions about intent and motive." *Tate v. Parks*, 791 Fed. App'x 387, 391–92 (4th Cir. 2019). This counsels strongly against granting summary judgment here, where Defendants have control over the relevant facts and their intent and motivation are central to the case. Defendants have not made any arguments to the contrary or explained why the Court should deviate from the usual practice and consider summary judgment before there has been an opportunity to conduct discovery. Accordingly, Defendants' motion for summary judgment will be denied.

**B.     Class-Of-One**

**1.     Qualified Immunity Legal Standard**

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It "shields government officials from liability for civil

damages, provided that their conduct does not violate *clearly established* statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013) (emphasis added). The purpose is to avoid liability for "bad guesses in gray areas" and instead hold officials liable only for "transgressing bright lines." *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (quotation omitted).

The court must determine, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (overruled on other grounds)). A defendant is not liable unless existing precedent has put the "constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Officials must have "fair warning that their conduct was unconstitutional." *Iko*, 535 F.3d at 238 (internal quotation omitted). The purpose is to give "government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft*, 563 U.S. at 743.

### 2. Analysis

The question before the Court is whether class-of-one Equal Protection law is not clearly established such that the Defendants are entitled to qualified immunity. Viewing the allegations in the light most favorable to the Plaintiff, no reasonable officer would reasonably, but mistakenly believe that the conduct alleged was permissible. Accordingly, the Court holds that the Defendants are not entitled to qualified immunity and will deny the Defendants' Motion for Summary Judgment.

The Supreme Court established the class-of-one theory of liability under the Equal Protection Clause in *Village of Willowbrook v. Olech*. 528 U.S. 562 (2000) (*per curiam*). In *Olech*, the Village required the Olech to grant it a thirty-three-foot easement for Olech to gain

access to the municipal water supply; other property owners were only required to grant fifteen-foot easements. *Id.* at 563. Olech sued the Village, arguing that the disparity in required easement size was "irrational and wholly arbitrary" and that "the Village's demand was actually motivated by ill will" and therefore violated the Equal Protection Clause of the Fourteenth Amendment. *Id.* However, that "ill will" was not motivated by Olech's membership in any particular class or group; it was unrelated to her race, sex, or national origin, and so forth. *Id.* The Supreme Court held that an individual has stated a class-of-one claim under the Equal Protection Clause where they alleged that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564–65.

Thereafter, the Fourth Circuit applied this reasoning in other cases, beyond the easement context. *See C & H Co. v. Richardson*, 78 Fed. App'x 894, 901 (4th Cir. 2003) ("[I]t is thus clear that the Equal Protection Clause prohibits intentional discrimination even against a 'class of one.'"); *Ruttenberg v. Jones*, 283 Fed. App'x 121, 131 (4th Cir. 2008); *Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 439–40 (4th Cir. 2002); *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328–29 (4th Cir. 2005). *Willis v. Town of Marshall*, is particularly analogous to Ms. Brent's claim. 426 F.3d 251 (4th Cir. 2005). In *Willis*, the plaintiff was barred from attending public dances because she "danced in a sexually provocative manner." *Id.* at 254. Willis alleged that she was impermissibly singled out, and that the town did not "punish others who danced or dressed similarly," including Willis's dance partner. *Id.* at 263. The Fourth Circuit held that "Willis's allegations of arbitrary singling-out by the Town are sufficient to support an *Olech* 'class of one' claim." *Id.* While Willis was not singled out by law enforcement officers, as Ms. Brent allegedly was, the uneven application of the law against a disfavored individual without a

9

rational basis is similar. Accordingly, as of 2005, class-of-one claims were sufficiently clearly established to warn the Defendants about the unlawfulness of their conduct.

However, in 2008 the Supreme Court modified its class-of-one jurisprudence in *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008). The plaintiff, Engquist, was effectively laid off from a local government position, which she alleged (and a jury agreed) was for "arbitrary, vindictive, and malicious reasons." *Id.* at 595–96. But the Supreme Court held that a "class-of-one theory of equal protection has no application in the public employment context." *Id.* at 607. The Supreme Court drew a distinction between "the government exercising the power to regulate or license, as a lawmaker" and "the government acting as proprietor, to manage its internal operation." *Id.* at 598 (internal quotations and alterations omitted). And it noted that the "government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large." *Id.* at 599. These factors distinguished the public employment context from other contexts where class-of-one claims have been allowed. Because "treating seemingly similarly situated individuals differently in the employment context is par for the course," the "class-of-one theory of equal protection . . . is simply a poor fit in the public employment context." *Id.* at 604–05. The Supreme Court further explained that class-of-one claims are "contrary to the concept of at-will employment," a "familiar doctrine" that the Constitution does not repudiate. *Id.* at 606.

The Supreme Court also reasoned that some forms of state actions "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id.* at 603. And that, in these contexts, "treating like individuals differently is an accepted consequence of the discretion granted." *Id.* To illustrate, the Supreme Court provided a hypothetical in which a traffic officer "is stationed on a busy highway where people often drive

above the speed limit" with "no basis upon which to distinguish them" and the officer "gives only one of those people a ticket." *Id.* It explained even though the ticketed speeder was arbitrarily singled out, that circumstance "does not invoke the fear of improper government classification." *Id.* at 604.

Defendants contend that *Engquist* has disrupted the law on class-of-one claims such that the law is no longer clearly established and so Defendants are entitled to qualified immunity. (Defs.' Mot., ECF No. 38-1 at 10–11). Despite the explicitly cabined holding in *Engquist*, 553 U.S. at 607, some courts agree and have expanded *Engquist*'s reasoning beyond public employment or have granted qualified immunity for class-of-one claims because the law is unsettled. *See, e.g., Flowers v. City of Minneapolis*, 558 F.3d 794, 799–800 (8th Cir. 2009) ("In light of *Engquist*, therefore, we conclude that while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim."); *Thayer v. Chiczewski*, 705 F.3d 237, 255–56 (7th Cir. 2012) ("Although *Engquist*'s holding was confined to the public-employment context, its reasoning, to some extent, applies to discretionary law-enforcement decisions."); *see also Mathis v. McDonough*, Civ. No. ELH-13-2597, 2014 WL 3894133, at *28 (D. Md. Aug. 7, 2014) (collecting cases). But other courts have considered this and declined to extend the *Engquist* reasoning beyond public employment. *See, e.g., Mathers v. Wright*, 636 F.3d 396, 402 (8th Cir. 2011) ("As pointed out in *Engquist*, the Equal Protection Clause has long prohibited arbitrary classifications. . . . In light of those well-established principles, we see no reason why the prohibition of intentional, arbitrary discrimination would be any less clear in the class-of-one context than in traditional equal protection analysis.") (internal citations and quotations omitted); *Frederickson v. Landeros*, 943 F.3d 1054, 1061 (7th Cir. 2019) ("Importantly, this case does not involve state employment, and

so it is unaffected by the Supreme Court's recognition in [*Engquist*] that the class-of-one theory is not cognizable in public employment cases"). However, while disagreement among other circuits may sometimes be a factor in whether law is clearly established,[5] the Defendants here are bound by *Fourth Circuit* precedent.

It is clearly established here in the Fourth Circuit that class-of-one claims remain viable post *Engquist*. The Fourth Circuit did acknowledge, in dicta, that *Engquist* may have impacted viability of class-of-one claims. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 542 n.13 (4th Cir. 2013). But, the Fourth Circuit has continued to cite pre-*Engquist* cases, including *Willis*, as good law regarding class-of-one claims post-*Engquist*. *See Kelly v. Conner*, 769 Fed. App'x 83, 89 (4th Cir. 2019) (citing *Willis* as "stating the standard for a 'class of one' equal protection claim"); *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 82 (4th Cir. 2016) (citing *Willis* and noting that a class-of-one claim can be stated if "it can be shown that the government's action constituted irrational and wholly arbitrary discrimination of that individual") (internal quotation omitted).

Further, there is relatively recent (and, importantly, post-*Engquist*) Fourth Circuit precedent on point: *King v. Rubenstein*. 825 F.3d 206 (4th Cir. 2016). In *King*, the plaintiff was an inmate at Huttonsville Correctional Center who brought a Fourteenth Amendment class-of-one claim after prison officials required him to have "surgery to remove penile implants." *Id.* at 211, 220. King alleged that other inmates with penile implants were not required to have their implants removed and that the prison officials were unable to convincingly explain the disparity. *Id.* at 220–22. On this record, the Fourth Circuit reversed the district court's dismissal of King's class-of-one claim. *Id.*

---

[5] *See Pfaller*, 55 F.4th at 455 ("This varying case law shows the inherent gray area that [the defendant] was operating in. And 'qualified immunity protects public officials from bad guesses in gray areas.'") (quoting *Durham v. Horner*, 690 F.3d 183, 190 (4th Cir. 2012)).

12

These facts are sufficiently analogous to Ms. Brent's allegations to put Defendants on notice that (1) class-of-one claims are still viable in the Fourth Circuit and (2) that arbitrarily enforcing a law against one individual but not against others is unconstitutional. Like King's allegation that other similarly situated inmates were permitted to keep their penile implants, Ms. Brent alleges that her neighbors were similarly situated but treated markedly better than she was. (Mem., ECF No. 34 at 14–15.) While the Defendants may dispute this, Ms. Brent alleges that there was no rational basis for this disparate treatment and that it stemmed not from legitimate law enforcement purposes, but rather from animus against her. (Pl.'s Opp., ECF No. 40 at 13–14.) And at this stage Ms. Brent's allegations must be viewed in the light most favorable to her. *See Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016). Tellingly, the Defendants neither acknowledged *King* nor made any attempt to distinguish it from this case.

In light of *King* and the Fourth Circuit's ongoing citation of *Willis* as good law, it is clear that *Engquist* did not disrupt class-of-one claims beyond the public employment context, at least in the Fourth Circuit. If dicta in *Engquist* and *Sansotta* were enough to throw class-of-one precedent writ large into question, *King* answered that question clearly: class-of-one claims against law enforcement officers remain viable in the Fourth Circuit. Accordingly, Defendants are not entitled to qualified immunity for Ms. Brent's class-of-one claim because the relevant law is clearly established.

Defendants' cases to the contrary are not persuasive. They cite to *Wilson v. Town of Mt. Jackson*, Civ. No. 21-0005, 2022 WL 819531 (W.D. Va. Mar. 17, 2022), which granted qualified immunity to police officers because class-of-one law in the Fourth Circuit was not clearly established. (Defs.' Mot., ECF No. 38-1 at 11). But the reasoning in *Wilson* is not convincing because it mistakenly characterizes the Fourth Circuit as failing to consider whether the

defendants' conduct in *King* was discretionary, a factor discussed in *Engquist*. *See id.* at *14. That characterization is simply incorrect. In *King*, the Fourth Circuit explicitly recognized the appropriate deference courts must give in the carceral context "to ensure that prison officials are afforded the necessary *discretion* to operate their facilities in a safe and secure manner." *King v. Rubenstein*, 825 F.3d 206, 221 (4th Cir. 2016) (emphasis added) (quoting *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002)). And Judge Hollander's thorough discussion of this issue in *Mathis v. McDonough* is out of date because it preceded *King*. 2014 WL 3894133 at *27–29.

Further, the purpose of qualified immunity is to give "government officials breathing room to make *reasonable* but mistaken judgments about open legal questions." *Ashcroft*, 563 U.S. at 743 (emphasis added). The issue is whether a reasonable officer might have been mistaken about the state of the law. Taking Ms. Brent's allegations in the light most favorable to her, the Defendants intentionally acted to selectively enforce the law against her because they dislike her and are friends with her neighbors. (Mem., ECF No. 34 at 14–15.) No reasonable officer would have thought such conduct was lawful.

Ms. Brent's allegations are very different from the hypothetical traffic officer described in *Engquist*. That officer had no personal connection to any of the drivers, nor did they give the ticket for any specific reason. In other words, that hypothetical choice may have been *arbitrary*, but it was entirely *random*. Not so with the Defendants' alleged conduct. Ms. Brent had an existing relationship with the Defendants, they had previously answered calls from her or from her neighbors, some of whom they also know personally, which Defendants acknowledge. (*See generally* Cramer Aff., Roberts Aff., ECF Nos. 38-2, 38-3.) The Defendants then allegedly used their power maliciously towards Ms. Brent. The hypothetical presented in *Engquist* does not permit that kind of conduct, even if it were not dicta. No reasonable officer would believe he could

14

use the law to benefit his friends by selectively enforcing the law against their enemy, regardless of *Engquist*. *See Hanes v. Zurick*, 578 F.3d 491, 496 (7th Cir. 2009) ("[U]nder any view we have taken, arrests motivated by personal animus are unconstitutional."). Accordingly, the Defendants have no qualified immunity for Ms. Brent's class-of-one claim and their Motion for Summary Judgment will be denied.

IV.  **CONCLUSION**

For the foregoing reasons Plaintiff's Motion for Leave to File Third Amended Complaint and Defendants' Motion for Summary Judgment will be denied. A separate Order will issue.

DATED this 27 day of October, 2023.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge